UNITED STATES DISTRICT COURT

HELENA DIVISION

* * * * *

| | |
|---|---|
| BOBBY FRANCIS LOWRY V | |
| Petititioner | Cause No.: |
| Vs. | |
| STATE OF MONTANA | WRIT OF |
| ELECTRICAL BOARD, LABOR | CERTIORARI |
| BOARD, | |
| Respondent | |

COMES NOW, Bobby Francis Lowry V, by and through himself, Pro-Se, and files with this Court, this Writ of Certiorari, for the below listed reason(s):

SNAPSHOT OF ISSUE

The State of Montana Electrical Board \ Labor & Industry. Has after excess of two years. Has sought to move forward with three vague allegations of misconduct in the electrical field, against the Petitioner.

In the furtherance of that aim. The State Electrical Board has ordered the Petitioner to produce, or disclose various items, or answer various questions. All in relation to the Petitioner's business interest.

It is the Petitioner's position that these items are an overreach of the State Electrical Boards jurisdiction, and encroach into the Petitioner's current criminal matters. As will the Petitioner believes these "discovery request" questions place the Petitioner at risk of

enhancing current criminal charges, supporting new criminal charges, or creating new civil penalties.

Thus, this Writ seeks clarification of, if any, Constitutional violations that exist.

## I. BACKGROUND

On September 6, 2019. The above-named Petitioner was released from Montana State Prison. With a goverment check of $72.00, and a halfway house rent payment of $600.00 due by the 8th.

Somehow despite those odds. The Petitioner eventually opened a company. A company that would hold in excess of $700,000.00 in company assets, and employ up to 26 Montana Citizen, on any given day. A company that provided good wages, health insurance, paid vacations, and even a 401k.

On October 12, 2019. The Montana State Labor Board began investigating the Petitioner. The Petitioner up to this date. Had two customer's. One a drywall job. The other a roof, and no employe's.

Now, four years later. The Petitioner sits in county jail; Broke, hungry, and scared; at 4 in the morning. Where the Petitioner has sat for nearly three years.

The state keeps making plea offers. Very nice offers; but at what point must a man standup for what he believes in?

The state of Montana used its power to suppress

the Petitioner's company. In order to strengthen there
friends company. All while the family's of the
unemployed, and my family, suffer.

A.) Basic Bio.

The Petitioner was born April 2, 1977. In Woodland,
California. The Petitioner has been married five times, and
has nine children. The Petitioner is a resident of Farmington,
New Mexico. Where the Petitioner resides with his
current ex-wife\ girlfriend. Whom lives on the Petitioner's
family property with the Petitioner's Mother and children.

B.) Employment Background

The Petitioner at age 18, joined the U.S. Navy.
Shortly after the Navy. The Petitioner gained a B.A.S.
in electrical engineering. The Petitioner is considered
a "mathmatical prodigy", and has written complex
codes for multiple R.A.D.A.R. system's across the
United States.

But the Petitioner's primary field of work is
as a automation\ controls engineer in heavy industry.

The Petitioner has worked for multiple
companies. Including Dole - electrician, Fresh Express -
electrician, Bolthouse Farms - instrumentation Tech.,
Fransia - controls engineer. California Department of Energy -
Instrumentation engineer, Birdseye - Ammonia tech., Ford\
Canada - plant engineer, Ford\ Ohio - manufactoring process
improvement engineer, multiple oil & gas companies as a
private controls engineer, and multiple plastic companies

as a electrician \ process improvment engineer.

The Petitioner holds high level skills in advanced instrumentation and process controls. Has certificates in switch gear, reactor contrals, framing, concrete sciences, low voltage, internet system, manufactoring control communication, and refrigeration systems.

The Petitioner as as well carries safety certificates in ammonia, lock-out tag-out, confined space, supplied air, high voltage, arc protch protection. To name very few.

The Petitioner has in excers of 20 years of electrical field skills.

C.) Past Criminal Background

The Petitioner was convicted in 2017. In the State of Montana. Of one count of theft by emberzlement.

The Petitioner as well was convicted. In the State of Montana; of one count of P.P.M.A, and one count of Promotion of Prostitution.

The Petitioner was sentenced to 10 years D.O.C.; with five years suspended, and five years M.S.P..

The Petitioner has prior convictions from the state of California. Yet all California convictions have been sealed, and therefore are uncitable.

D.) Current Criminal Background

1.) One seperate cause, of one count of Accountabilty to aggravated assault. — convicted \ unrelated to this matter

2.) One seperate cause, of one count of Witness Tampering - Resulting from a office worker, of a employment agency. The Petitioner used to supplement staff shortages for the Petitioner's business.

Said office worker; after the Petitioner's arrest. Contacted the state and claimed the Petitioner stole $7,000.00 from her, by not paying an outstanding bill.

When the Petitioner was informed the Petitioner asked the Petitioner's girlfriend to send a email to said office worker's employer. The actual company owner, and inform said owner of said office worker's claim. Which resulted in said officer worker droping her claim of theft. Which resulted in the Petitioner being charged with one count of Witness Tampering.

3.) One seperate cause, of one count of Theft, and one count of Deceptive Practices. — These criminal charges are the criminal charges at issue in this writ.

Said issue arises out of the State of Montana Electrical Board seeking discovery in regards to a nearly four year old electrical complaint. This electrical complaint and the above criminal theft charges, the Petitioner will prove in this writ; are both allegations one and the same, and heavily intwined, and have created constitutional violations

The Petitioner will prove in this writ that the above criminal allegations are a direct resut of the electrical

boards investigation, and contradictory to the State electrical boards hearing officers ruling on the state electrical boards Motion to Compel Discovery, engages and or violates multiple Constitutional rights of the Petitioner.

To prove this the Petitioner will ask the Court to look at Ex. "C". In said exhibit state bard investigator Brette Friede (Friede) is a listed witness. This is necessary because Friede investigated, and sought prosecution of the above criminal charges. Friede as well compiled all evidence, "witness's", and "claim's. To prove this the Petitioner will provide multiple email exchanges. As well as exchanges made between Friede, and the Petitioner's parole officer Deana Lougee

That being said. Looking at exhibit "E". Mrs. Lougee informs Mr. Friede of my arrest on the above criminal allegations and ask Mr. Friede if Friede "plans to file any criminal charges on his end."

This is important because it clearly shows that any interaction with any Bard representative. May result in criminal charges, and clearly gives rise to V amendment protections

Now please reference Ex. "C" and Ex "D". In exhibit "C" and "D" multiple alleged "victims" are listed. Of these "victims" all nine are part of Mr. Friede's electrical investigation report. This is proven by looking

at Ex. "I", page 25, & 26 of Mr. Friede's report (due to cost the Petitioner is unable to send the entire report). This exhibit when compared to ex "c", and ex "d" show all the common "victims" (nine common "victims")  * note (not one "victim" had any electrical work performed).

The fact is Mr. Friede engaged in illegal long-term survalance of the Petitioner's home, customers, online activity, banks, and employee. Using said illegal activity to develop the criminal allegations made against me. Now Mr. Friede is attempting to prop-up the collapsing criminal case Mr. Friede created by collecting new evidence via the boards sudden decision to prosecute four year old electrical violations.

This intanglment is clear in exhibit "L" Which is a strange picture taken on a job site by Mr. Friede through a pair of blinds.

As well in exhibit "k" Mr. Friede notes his online monotoring and the fact that my "home has a security system".

Next to demonstrate a ongoing IV amendment danger of new criminal, or civil allegations being made against the Petitioner. Please reference ex. "A1". In ex "A1" Mr. Friede is noted in a police report issued March 23, 2023. Shortly before my theft trial was scheduled to begin, and a week before the electrical board began attempting to pursue the nearly four year old electrical violations.

"IV The Montana Department of criminal investigations

was contacted by our agency in regards to taking over the case due to the fact that Bobby Lowry had defrauded people from throughout the State. However they declined to take over the case. *I learned that Brette Friede with the Dept. of Labor and Industry was working a statewide civil case on the matter.* *(emphasis added)*

The actual fact being that the States criminal case collapsed at trial. When it became apparent that the Petitioner had legitimate reasons for terminating jobs (i.e... for example a customer whom became drunk and pulled a gun on an employee (the youngs), a customer who stole $1,600⁰⁰ in materials (the Christenson's), and a customer whom attempted to manipulate a free sealing service).

Not that multiple "victims" existed across the State. Simply put the state wished to create such an over-whelming amount of "victims" that a weak case would become stronger simply by the volume of people claiming to be "victims".

When the allegations were broken up and analyzed at the Petitioner's first trial by a fair reviewer. The allegations quickly dissolved, and if the electrical board had given fair and equal treatment to the Petitioner. As required by law. Said criminal, or civil allegations would most likely have never been made.

Now please reference ex. "A2". In this exhibit Mr. Friede ask the Petitioner's parole officer for my wife's

contact information. He ask that my parole officer forward said contact information to Katie Jerstad. My prosecuting attorney.

"If you have any information on her can you send it to Katie Jerstad at the county attorney's office."

This email was sent 12 days after my arrest, and 3 days before the above theft charges being filed.

Finally, in closing please reference ex "A2". The date on ex. "A2" is April 12, 2021. In said exhibit Mrs. West tells Brette Friede to complete his electrical board investigation. No later then Wednesday, April 15, 2021 ( please note the completion date of the electrical board allegations, and the date the electrical board actually notified the Petitioner. Nearly three years). Now please reference the filing date of my criminal charges of theft (Ex. "C"). Said date is April 15, 2021.

This is clearly not by "accident". After reviewing the above evidence. It is very clear that my criminal allegations, and the state electrical boards investigation are intertwined.

Thus this Writ will seek constitutional clarification of these and more issues in relation to current attacks on the Petitioner, by the state electrical board. Attacks that threaten the Petitioner with new criminal, or civil charges, or strengthen a already very weak criminal charge.

E.) Current Civil Allegations

The Department of Labor & Industry\ State of Montana Electrical Board (Board). Has made three "civil" (term used loosely) allegations of electrical misconduct against the Petitioner.

i.) Allegation #1

The first of the three allegations is made by a local electrical contractor, and listed under Case No.: 2020-ELE-195.

Allegation 2020-ELE-195 alleges no wrong doing to the accuser. It simply alleges that the Petitioner posted items on Facebook, or other websit's. Said allegations claim that these post somehow harmed the accuser. Even though the accuser has never met the Petitioner in person. Nor did the Petitioner. At anytime. Offer the alleged "victim" any kind of electrical services. This fact is undisputed by the Board.

The Board used these allegations. Allegations of no wrong doing. To establish cause to engage in long-term surveillance. The Board claims that as an administrative body that they do not need "warrants"

The argument collapses easily when one reads the Electrical Boards own, Complaint Processing Summary (Ex."A"). A pamplet provided anyone charged with a electrical complaint To.

"In addition all boards and programs have the authority to seek an injunction or declar declaratory

action in response to substantiated cases of
unlicensed practice or to refer such cases for
criminal prosecution "emphasis added" Under
Unlicensed Practice, final line of paragraph (ex. "A").

The Petitioner argues that this one line turns
allegation 2020-ELE-195 into a criminal investigation
and that, that wording activates certain constitutional
protections for the Petitioner

So based simply on that wording. The Petitioner
argues that the Petitioner ~~shol~~ should be appointed
a state public defender prior to any further questions
via "discovery" request being made by the Board.

This is necessary to fully explore this allegation.
Since said allegation is ripe for dismissal. As well as
the Boards attempts to violate the Boards jurisdictional
boundries (see Ex. "L"). As well, as to explore the Boards
long term illegal surveillance, and the fact that this
allegation is based on the Board illegally seizing
~~the~~ evidence the Board relies on to make this allegation.

Basically, the Board used its illegal long-term
surveillance and seizure to create this allegation. All
based on information the Board had to receive to have
any allegation. To a lay person this makes no sense.

The Board claims that Mr. Allen (alleged "victim")
provided all the relied upon evidence completly on his
own. "With no guidance from the Board". This argument
is easily disproven by simply looking at Ex "K", and

Ex. "f" In Ex. "f" Friede (Board investigator) states.
   "Any news on Bob. I see his websites are down as
of today. I haven't checked them for a while." €
   Clearly Mr. Friede is the one intercepting online
data. But even if we grant the state all of the above
ridiculous claims. The Board then turning around and
attempting to order the Petitioner to respond to
questions of unvarafible websites and post. Is
ridiculous.
   First, it is very clear that most of the post are
fake. Ex. "f" says the websites has been in operation
since 2017. The Petitioner was in prison from 2018 to
2019. Next ex. "u" list a phone number the Petitioner
has never had, and an address the Petitioner lived at
for less then 30 days, in 2019. Bob The Electrician opened
in February of 2020. Ex. "u" list some unknown phone
number. None of the information on any of the Boards
online evidence makes any sense. None of it matches.
It is clearly fake.
   With out a proper warrant. The Petitioner has no
way of knowing what is real or fake. Since no Meta
data exist. Such as i.p. adress, time stamps, etc.... The
Board can not expect the Petitioner to do its job in
convicting the Petitioner of a crime by answering
questions in relation to the Boards illegal actions. As to
"prop-up" its illegally obtained evidence at best, and at
worst. To sort through fake evidence and possible real

evidence. Mr. Allen ("victim") has a clear interest in creating fake post. Since Mr. Allen is in ~~competition~~ competition with the Petitioner.

The simple fact is. That the Petitioner as the Petitioner is constitutionally allowed to do. Upon the Petitioner's release from prison began the process of opening an electrical company in Montana. The Petitioner paid his license fees. Purchased a business license and began online exploration and development of said potential company.

Yet shortly after this activity. The Petitioner realized that Montana has very little heavy industry. That being the Petitioner's specialty. Upon this discovery the Petitioner simply rotated his business into a regular construction company. The Petitioner sought no work as an electrician, and performed no work as an electrician.

That is why this strange "allegation" exist, because the Board had no other real violation of any law. The simple fact is Mr. Allen can not file an allegation with the Board. He was never approached or offered electrical services. Viewing online activity (that was not the Petitioner's activity) does not constitute a crime. The Petitioner has every constitutional right to say what the Petitioner wants to say online. There is no way to sort out which post are old (pre-prison) fake, or current. Since the Board illegally collected the

the alleged "evidence"

ii.) Allegation Number Two

The second allegation made by the State of Montana Electrical Board is listed under Case No. 2020-ELE-311.

Case No. 2020-ELE-311 involves a set of concrete steps. These concrete steps contained solar lights inplanted into them. As to illuminate said steps for an elderly home owner.

It is important to point out that under Montana electrical code, state building code, and county building code. That the electrical componets of these stairs, since not tied to any residential electrical grid, and since being solar. Did not require any electrical permit. As well since the concrete steps led to a secondary entrance, and not the main access from the street (primary residential entrance). No building permit was required (this fact is easily varifable by a internet search of Montana code).

Yet shortly after pouring and completing the installation of the concrete steps. A building inspector named Skip Gee showed up on the job site. Mr. Gee ~~imied~~ immediately began asking questions with no explanation as to who he was, or what he was doing, and due to Mr. Gee's moving away from the Petitioner, as to avoid the Petitioner's questions. The Petitioner

due to a hearing disability, could not understand
Mr. Gee. The Petitioner repeatedly asked for clarification
from Mr. Gee. Mr. Gee refused to provide any assitance,
and left within three minutes of arrival. Mr. Gee
~~tetten~~ placed a stop work order on the house
door before leaving. Mr. Gee gave no explanation.

When the Petitioner read the document. The document
explained that one step of the stairs was $\frac{3}{8}$ inches
larger then the other steps. The Petitioner contacted
Mr. Gee and attempted to have Mr. Gee return to
the job site. So the Petitioner could pull back the
carpet that covered the porch, and thus the step
would meet Mr. Gee's imaginary spec. As well the
Petitioner wanted Mr. Gee to understand Montana, and
city of Helena building code. Which clearly stated that
Mr. Gee had no authority over the job site. Mr.
Gee refused to return to the job site.

So in the hope of completing the job with as
little trouble as possible. The Petitioner removed the
steps and sought a unneeded permit.

This became an impossible task. No matter what
the Petitioner did, the city inspectors office would
not issue a permit. It is important to note that at no
time had the Petitioner received any notification of
any issue with the electrical board. Which is critical
in the electrical boards process. No state of Montana
employee said one thing about an electrical board

complaint. Even though an investigation is not sealed or allowed to be hidden from anyone. Mr. Gee handed no notification or complaint to the Petitioner. The Boards investigator and Mr. Gee simply continued to follow the Petitioner.

Even after the Petitioner paid over $600.00 to a professional engineering company to write up the permit request. The inspectors office said it was not complete, or correct.

It became clear to the Petitioner that the entire incident was a communication issue, caused by Mr. Gee and the building inspectors office not accomading the Petitioner's disability. The Petitioner therefore filed an A.D.A. complaint against the city with the Human Rights Board. This was a mistake since two days later the electrical board ~~launch~~ began its investigation of the Petitioner.

Eventually, nearly ~~two months later~~, the Petitioner's sub-contractor\Journeyman ~~defelectrikian~~ electrikian was able to pull the needed permits. Only after the Petitioner's attorney contacted the building inspectors office; but by that time Mr. Friesle had informed the home owner of the Petitioner's past criminal record. The home owner with that information terminated the contractor. Costing the Petitioner thousands of dollars.

This allegation is strange since first the allegation was made before the act became a violation of any law

Skip Gee investigated the crime using surveillance based on probable cause for the crime he alleged prior to said crime even occurring. As well no warning was ever given, as set forth in Montana law. As well per the permit request. It is very clear that the Petitioner employed a licensed electrician. Said electrician pulled the permit. Furthermore, pictures submitted of the job site, fail to show the pictures of the back of the steps. Since the back of the steps showed the conduit connecting to a solar panel. These pictures were taken by Mr. Gee, as well as the Petitioner. The Board has simply decided to not disclose those photos. Since they destroy the Boards complaint.

Yet this complaint is still a electrical board complaint. The real question is why would the electrical board alter its normal policy of a stop letter, warning, then fine for failure to pull a permit. Move contrary to its policies and straight to a criminal investigation.

Furthermore, the homeowner did not initiate or file this electrical board complaint. This complaint was initiated by Skip Gee, and filed by Board investigator, Brette Friede. Thus, making only Mr. Gee's and Mr. Friede's version of the allegation, the allegation. Mr. Friede is listed as the filing victim. Not the homeowner. Leaving only Mr. Gee's and Mr. Friede's version of the story. The version. This forfits any hope of the Petitioner challenging a current investigator. It has to be the only time in the history of criminal investigations that the investigating officer is also the listed victim of the

crime, and violates Montana law. Since the definition of victim under 46-18-201(5) is-the term "victim", in relevant part, means, "a person who suffers loss of property, bodily injury, or death as a result of the commission of an offense. Neither Mr. Gee, or Mr. Friede have in any way suffered any loss or harm.

Furthermore, for the Board to allow Mr. Gee to retaliate against the Petitioner, for the Petitioner's filing of a A.D.A. claim, is clear corruption. The simple fact is that the electrical board ignored basic law. Ignoring the lack of search warrants. The fact that the "victims" are the investigating officers, and that a licensed electrician pulled a permit for this job. It demonstrates the boards willingness to ignore the truth to harm the Petitioner in support of a county employee (Gee).

In closing, of this allegation. The Petitioner ask the Court to once again look at Ex "L". This is a picture taken from the livingroom of this customer's house. Imagine an elderly home owner having an "officer of the law", ask if he could take photographs of your contractor. From your livingroom. Of course this home owner wished to terminate the project.

Mr. Friede performed the action of photographing the Petitioner. Prior to any crime in the state of Montana existing. No "victim" had come forth. What so ever. Mr. Friede's supervisor felt it proper to allow this surveillance to occur

With no legal reason to establish probable cause.

iii) Allegation Number Three

The third and final allegation made by the State electrical board is listed under Case No. 2020-ELE-448.

Case No. 2020-ELE-448 is a claim made by a past "customer", whom sought the replacement of a light fixture above said customer's kitchen sink.

Said customer contacted the Petitioner to give her an estimate of this installation. The Petitioner contacted the Petitioner's sub-contractor\licensed Journeyman electrician and gave her an estimate of the cost to install the new light fixture.

The "customer" excepted the bid. Signed a contract and agreed to pay 50% down payment. This payment is insurance that Petitioner can purchase materials, and pay employees and sub contractors to begin work with out fear of loosing to much money if the "customer" attempts for various reasons to back out of the contract, and leave the Petitioner "high-and-dry".

After payment by the Petitioner Customer. The Petitioner purchased the requested light fixture and other materials. Paid the licensed Journeyman electrician and dispatched two employees to prepare the job site, i.e... Cut holes in drywall, remove siding, drill holes, etc.....
Later that evening the Petitioner was informed by an employee that the licensed Journeyman electrician had informed said

employee that the "customer" had made the electrician purchase a different light fixture. A light fixture substantially more expensive then the light fixture originally requested. Nearly six times the price of the entire project combined.

This raised a "red flag" for the Petitioner. With over 20 years experience the Petitioner knew this was a common "con". For a person to claim to be a customer, and then seek costly materials, and then cancel said customer's check.

Therefore, the Petitioner, prior to making any further purchases. Decided to go to the "customer's" bank and ensure the check was valid. Upon arrival at the "customer's" bank. The Petitioner was informed that said "customer's" bank account was overdrawn, and that the bank could not cash the "customer's" check.

The Petitioner on those grounds contacted the "customer" and informed said "customer" that she needed to pay for the light fixture Since it could not be returned.

The "customer" at that point informed the Petitioner that he was on parole, and that the "customer" had been contacted by a investigator for the state electrical board and told that she did not need to pay for anything, and that if I did not give her for "free" the light fixture The "customer" would have the Petitioner arrested.

The Petitioner with the knowledge that the

Petitioner had three witness's and a statement from the bank as to the disposition of said "customer's bank account. Felt confident to not bow down. Sure enough within one hour the Petitioner's parole officer contacted the Petitioner and told the Petitioner that if he did not give the "customer" the $1,200.00 light fixture. That she would have the Petitioner sent back to the B.O.P.P. The Petitioner informed his parole officer of the evidence he had and refused to turn over the light fixture for free.

Two days later the Petitioner was contacted via a email by a boyfriend of the customer's. Whom happened to be a lawyer. The boyfriend told the Petitioner that the Petitioner needed to turn over the $1,200.00 light fixture. The Petitioner informed the boyfriend that he would not be shaken down. In response to this demand, and all the money the Petitioner lost. The Petitioner filed a lien against the "customer's" property.

A few days later the Petitioner was again contacted by his parole officer, and told he would be returned to the B.O.P.P. if he did not turn over the light fixture, and remove the lien. The Petitioner gave in and removed lien but refused to turn over the light fixture.

After payment to the subcontractor payment to the Petitioner's employees, The cost of the light fixture, and legal cost, The Petitioner had lost $3,600.00 and felt

completely "coned" and "shaken down" by the state and the "customer". Yet it had only begun.

The "customer's" boyfriend once again contacted the Petitioner and again demanded the light fixture, and informed the Petitioner that if he did not turn over the light fixture. That the boyfriend would file a claim with the State electrical board. The Petitioner knew that this threat was ludicrous because the petitioner had hired a licensed electrician to do the job, and thus no claim could be made. Yet despite the Petitioner's compliance with law, and his being "con'd" by the "customer", The board still allowed a complaint to be filed against the Petitioner.

Now to show this Court the level of bias and discrimination laid against the Petitioner by the state of Montana. This Court need only to reference ex "J". Ex "J" is an email from Brette Friede (electrical board investigator) to Beth Murphy. In this email Mrs Murphy informs Mr. Friede that an actual unlicensed electrician had been contracted by Mrs Scherr (the above discussed "victim") and had completed the job. Said actual unlicensed electrician was not recommended for criminal charges, or ordered to pay any fine. This unlicensed electrician was given only a warning. For the exact same violation the Board is now seeking a $1,500.00 fine, and criminal charges against the Petitioner

No clearer picture of discriminatory action by a state agency could be made. The Court only need to lay side by side the two cases.

The Petitioner carried insurance, workers compensation, and had subcontracted an actual licensed electrician (licensed electrician is an undisputed fact to the board. Since the board ordered the Petitioner to pay said sub-contractor employee wages. Despite a contract existing). Furthermore, the state electrical board hides the name of the unlicensed electrician from the Petitioner. "Blacking it out". Removing any possibility of the Petitioner calling this actual unlicensed electrician as a witness. This actual unlicensed electrician could testify to what work was performed prior to his arrival. Was said work electrical, or just drywall. As well the amount of work completed would have reduced Mrs Scherr's cost by thousands of dollars. The Petitioner feels this information very relevant as to show that no violation occurred. Yet the Board refuses to provide this discovery information. All while demanding the Petitioner provide evidence of new crimes.

## II. CONSTITUTIONAL CLAIMS\ISSUE

A.) II Amendment

All citizens enjoy Fifth Amendment Constitutional protection, regardless of who they are or how they are situated. It extends beyond trial or custodial situations, because "the [Fifth Amendment] privilege does not turn

upon the type of proceeding in which its protections is invoked, but upon the nature of the statement of admission and the exposure which it invites." Estelle v. Smith 461 US 454, 462 101 S. Ct. 1866, 1873, 68 L. Ed 2d 359.

Our four fathers set forth certain constitutional protections. As to protect us as Citizens. From suffering the same hardships from an unresponsive, vindictive goverment agency and it's agent's. As they had suffered. They wanted us to have a pathway to protection. An avenue that leveled the playing field.

The Petitioner to be honest. Considers himself to be Very intelligent. Yet even with that level of intelligence. The Petitioner finds it impossible to receive "a level playing field", a "fair shake" It seems to be the Petitioner versus everyone. Every law enforcement officer. Every state employe.

Yet what is right is right. With that beliefe. The Petitioner comes to this Court with what seems to him to be an obvious intrusion upon the Petitioners Constitutional rights. This leaves the Petitioner Scratching his head. How can I show the Court all of the facts on paper?

The Department of Labor & Industry thinks that because it labels it's allegations an "administrative proceding". That the Petitioner should expect no constitutional protections.

"

For example request for admission 14 asks Lowry to admit he "wired for or installed electrical apparatus or equipment for light, heat, or power in Montana after January 10, 2020" The work performed by Lowry, or his employees, does not ~~implia~~ implicate any privilege the department is aware of" Departments Motion to Compel, filed May 26, 2023, Page 5, line 2, 3, 4, and 5.

The Petitioner is pretty sure this statement is the exact opposite of what the V amendment stands for. Even if the Board's proceedings were merly "administrative proceedings" Request for admission 14. Has absolutely nothing to do with any of the three allegations made against the Petitioner, and is clearly an attempt to have the petitioner admit to current illegal activity, or admit to a new crime. The Petitioner has a very clear legal interest in self preservation of at a minimum his money, and at most likelyhood new criminal allegations. Thus of course the Petitioner is not legally required to answer such a question.

"The department shall investigate complaints or other information received concerning practice by an unlicensed person of a profession or occupation for which a license is required by this title" Mont. Code Ann. § 37-1317 (1)" Departments Motion to Compel (filed July 12, 2023) Page 8, lines 2, 3, and 4

The department even notifies the Petitioner that the department will pursue new charges using the discovery\evidence it receives from the Petitioner.

So how could the Labor Boards administrative hearings officer simply conclude that no risk to the Petitioner existed. When the hearings officers own co-worker, the opposing counsel, is saying outright that such a risk most definetly exist. The boards hearing officer even states the exact basis for the privilege said hearing officer claims that the boards counsel's questions are of no risk to the Petitioner in any proceeding, and such questions do not infring on the Petitioner's constitutional rights.

"However the Department is not seeking to punish Lowry for his speech, but rather is seeking to discipline him based on his alleged unlicensed electrical work" Order on Department's Motion to Compel, page 8, paragraph 1.

The Petitioner is very confused. In the Petitioner's world "punish" and "discipline" mean the exact same thing, and this statement is exactly why the Petitioner's V amendment right to not answer certain questions exist. Even the supposed "neutral" co-worker of the prosecutor tells the Petitioner that the board has every intention of "disciplining" the Petitioner. Even the pamplet mailed to the Petitioner upon his notification of the boards prosecution. Clearly ~~states~~ says that the

board plans to use gained evidence to pursue new
criminal charges.

"In addition, all boards and programs have the
authority to seek an injunctive or declaratory action
in response to substantiated cases of unlicensed
practice    or to *refer such cases for criminal
prosecution"* Department of Labor and Industry's,
Complaint Processing Summary (Ex."A"), Unlicensed
Practice paragraph * emphasis added *

"The board will refer such cases for criminal prosecution"
How can no V amendment privilege not exist in a
criminal investigation? The department even has the
~~audit~~ audacity to claim that the Petitioner has not
"invoked" his V amendment privileges. When clearly by
the Petitioner filing a brief disputing the Petitioner's
V amendment rights. Is an invocation of the Petitioner's
V amendment rights. Furthermore, the V amendment
is self invoking in criminal proceedings. Which
clearly the electrical boards allegations are criminal
proceedings.

"At this time, Lowry has not formally invoked the
right against self-incrimination, let alone done it
with particularity. His original assertions of
privilege were generic objections (to specific
questions) - "Confidential and privileged"" Departments
Supplemental Opening Brief (filed July 12, 2023) Page 5,
section B, line 1, 2, and 3

The board even attempts to claim it's hearing is so dissimilar to the Petitioner's criminal charges. That the Petitioner has no possibility of harming himself in those proceedings by responding to its questions.

"Even the phone number and email at issue in Lowry's Tampering with Witnesses and Informants Case are different than those the department asks about in its discovery request." Department's Supplemental Opening Brief, page 7 line 16, 17, and 18

The board simply ignores the theft case and attempts to compare its allegations to a witness tampering case the Petitioner is charged with. A charge in which the Petitioner's girlfriend sent an email to a witness's supervisor with said girlfriends phone number. Of course it doesn't match the board's allegations, because said email and phone number belong to the Petitioner's ex-girlfriend. The board simply ignores the theft charge in it's comparison. Even though it directly participated in the prosecution.

It is very simple page 3 of the Information charging the Petitioner list: Brette Friede as a witness (ex. "C", page 3). Ex. "B" as well list nine common "victims" when compared to the boards case (see Ex. "B", page 3; and Ex. "I")

As well ex "AI" clearly states that the board's investigation is:

"The Montana Department of criminal investigation was contacted by our agency in regards to taking over the case due to the fact that Bobby Lowry had defrauded people from throughout the state. However, they declined to take over the case. * I learned that Brette Friede with the Dept. of Labor and industry was working a statewide civil case on the matter. * *emphasis added* Ex. "A", Helena Police Dept Case Supplemental Report, Case Number HP204951

Next please reference ex. "e". Ex "e" clearly shows an email between Brette Friede (board investigator) and my parole officer, Deana Lougee. In said email Mrs Lougee ask Mr. Friede if:

"Do you know if he will be charged with anything on your end?" Ex. "e"

Ex. "G" is a department manager forwarding the business license information for the main charged "victim" in my criminal case. Said alleged "victim" claims that I did not complete a roof that I had planed to donate to him. After I backed out of the donation. The state claimed I stole from this individual by not moving forward with the donation. This "victim" was brought forward as part of the electrical boards investigation. What a roof has to do with electrical work is beyond me.

In closing it is very clear that the board is actively manipulating its process to either criminally

charge the Petitioner. Find new civil claims, or
support the already ongoing weak criminal charges.
The board's investigation was allowed to lapse
in excess of two years, after its investigation was
completed. The board did nothing until the states
criminal case collapsed in March. Clearly it is
a response to that collapse.

B.) Fourth Amendment

        The Fourth Amendment condemns "unreasonable searches
and seizures" and protects two rights :

        The first of these is the right to be secure
from intrusion into personal privacy, the right to shut
the door on officials of the state unless their entry
is under proper authority of law. The second and
intimately related protection is self protection; the
right to resist unauthorized entry which has as its
design the securing of information to fortify the
coercive power of the state against the individual
and information which may be used to effect a
further deprivation of life or liberty or property."
Frank, 359 U.S. at 365, 79 S.Ct. 808, 3 L.Ed. 2d at 891

        Article 11, section 10 of the Montana Constitution
establishes a fundamental right of privacy; "Right
of privacy. The right of individual privacy is
essential to the well-being of a free society and
shall not be infringed without the showing of a

compelling interest."

"The Montana constitutional right to privacy is not applicable." Department's Reply to Respondent's Response to Department's Motion to Compel, Page 9, Section A "Construction employees do not have a reasonable expectation of privacy". Department's Reply to Respondent's Response to Department's Motion to Compel, Page 11, line 5, and 6.

i.) Warrantless Online Seizure

Another constitutional issue is whether the board has\had the legal authority to capture Online private Facebook records?

"Based in part, on Allen's complaint, investigator Brette Friede captured screenshots of Lowry's business webpage and Facebook posts in April 2020 and April 2021." Department's Reply to Respondent's Response to Department's Motion to Compel, Page 13, line 6, and 7.

The board did not base it's search and seizure on a warrant properly provided by a Judge. A warrant based on probable cause. No it based its seizure on "Allen's complaint" (allegation number 1, business owner). Allen is not a judge. As well Allen had an extreme interest in providing false evidence.

Mr. Friede's screenshots included images of the Petitioner's Father, literally on his deathbed. An online private family fundraiser. Which was being used to

raise money from family members for the Petitioner's Father's medical cost. A picture of the Petitioner's Father in the hospital, Photos of the Petitioner's Wife imediatly after child birth. Images of the Petitioner's children. As well as private conversation between family members.

In no way was any of the items "public information" Yet the board claims they were all captured by "non-Facebook friends", and thus "public information". The board argues it could legally capture these images and share these private moments with the public. The claim is absolutely absurd. Of course the Petitioner's Facebook was not public, and the board admits this. Yet then claims it received the Facebook evidence from an alleged "victim". Even though said "victim" did not meet the legal definition of a "victim". Since said "victim" had never met the Petitioner, or ever been offered any construction service what so ever.

46-18-243 (2)(a)(iv) MCA - The term "victim" in relevant part, means "a person who suffers loss of property, bodily injury, or death as a result of the commission of an offense.

Furthermore, they use the allegation from Allen. To provide probable cause for four years of online records seizures. Even though Mr. Allen a.) did not meet the legal definition of a "victim" and b.) Filed his complaint October of 2021. Mr.

Allen's complaint did not provide the board with an endless "right" to monitor and seize the Petitioner's private moments.

The board even attempts to place blame on the Petitioner by claiming after the board violated the Petitioner's Constitutional rights. It was the responsibility of the Petitioner to explain the Petitioner's online privacy settings.

"Additionally, Lowry has not explained what security settings he has in place on his Facebook pag." Department's Reply to Respondent's Response to Department's Motion to Compel, page 15, line 16, and 15.

How would it be the responsibility of the Petitioner to prove his security settings, and thus validate prove the boards illegally obtained evidence. Security settings, records, and other items would have been part of a properly filed warrant. Easily varafiable and thus unduputable if the board had followed the law. The board can not now expect the Petitioner to correct its illegal actions. The board even has a secretary log into facebook and capture more images.

"Additionally, Department paralegal Heidi Clark captured screen shots of Lowry's Facebook page on or about January 24, 2023." Departments Reply to Respondent's Response to Department's Motion to Compel, page 15, line 11, and 12.

"Lowry did not have a reasonable expectation of privacy." Departments Reply to Respondent's Response to

Department's Motion to Compel, page 15, line 15, and 16.

Should we just take the board's word that this low level non-criminal law clerk is not a friend on the Petitioner's Facebook? She is a relative of a "victim" in the Petitioner's theft charge. What are her security settings?

This admition becomes even stranger when one views exhibit "F" In said exhibit Mr. Friede emails the Petitioner's parole officer at asking

"Any news on Bob. I see his websites are down as of today. I haven't checked them for awhile"

Yet some how a non facebook friend is now viewing online sites. Even though the Petitioner has been in custody since the email was sent. What changed since then? The shocking truth only greater support's the Petitioner's claims that the boards investigation and the county's criminal allegations are one in the same.

The fact is in order for the Petitioner to prepare for the Petitioner's criminal trial. The Petitioner turned over the Petitioner's Facebook password to one of the Petitioner's girlfriends. Shortly after the Petitioner gave his girlfriend his account password. The county attempted to charge the girlfriend with witness tampering.

This of course resulted in the girlfriend turning witness against the Petitioner. The Petitioner didn't

mind, she couldn't cook anyway. This of course
resulted in the now ex-girlfriend turning over
the Petitioner's Facebook password to the state (see
Ex. "12").

   The Petitioner eventually had to sue the ex-
girlfriend to recover the Petitioner's facebook password
(see ex. "10") and (ex. "11"). In ex. "11" the ex-girlfriend
admits to the court that she has the password to the
Facebook account, and that the petitioner did not know
the password. Leaving all possibilty of the online records
seized by the board ~~being one~~ fake, edited, or old.

   · So now for the board to claim my current Facebook
settings prove the board's claim - That my page is public.
Is completly debunked. Especially when one views exhibit
"k". In said exhibit investigator Friede writes in his own
hand "m.me/lowry.family.holdings." M.Me is a listed
friend on that Facebook page. The simple fact is that
the county prosecutor. Can not gather this information
in the same illegal way the board can. Thus the
rehashing of a nearly four year old electrical complaint.

   In closing of this section. The Petitioner ask this
Court to consider the simple fact that the board has
invaded every section of the Petitioner's life. Claiming
that the Petitioner has no right to privacy, and now
the board wants the Petitioner to help them validate
the illegally obtained evidence, as real

   For example ex. "7" says that my website was

Page 36 of 53

created in 2017. The Petitioner was in prison from 2016 to 2019. Ex. "v" uses a East Helena, Mt. address with a phone number the Petitioner has never seen, and ex "u" is a soberhouse the Petitioner was released from prison to. The Petitioner lived in said house for under 30 days, but the D.O.C. left it as the Petitioner's address for nearly a year. Clearly someone created it.

   The board can not be allowed to now turn around and expect the Petitioner to admit or deny it's illegally obtained evidence because the Petitioner does not know what is real, or fake. The simple fact that the Petitioner can claim this leaves the evidence tainted beyond recovery, and is the exact reason the board is not the proper venue to probe constitutional questions.

ii) Employees, Customer's, and out of state Associates Have a Right to Privacy

   "Employment records would reasonably contain among less sensitive information, references to family problems, health problems, past and present employers' criticism and observations, many of which most individuals would not willingly disclose publicly. Therefore, we find that under the circumstances the information requested by the Human Rights Commission is subject to the protections of Montana's constitutional right of privacy." (see. 10) 649 P. 2d at 1787-88, 39 St. Rep. at 1509

The Petitioner now moves the Court to consider the board's discovery request. As exactly what it is. A request that not only places the Petitioner at risk of new criminal, or civil allegations, but as well will implicate employees, customers, and out of state associates.

For example, interrogatories 7 and 8 ask for the identity of Lowry's former employees. Interrogatory 9 asks Lowry to identify electrical work he or his employees engaged in. Interrogatory 9 asks for the identities of those individuals for whom electrical work was done by him or his employees." Departments Reply To Respondent's Response To Department's Motion To Compel, page 6, line 7, 8, 9 & 10.

The Petitioner believes as he hopes this Court believes. That the Petitioner has a constitutional right to not implicate himself in possible new civil, or criminal allegations, by producing information specifically seeking exactly that type of information.

As well the Petitioner believes as he hopes this Court believes. That the Petitioner's employees, customers, and out of state associates as well enjoy a constitutional protection to privacy. Thus the Petitioner believes he has a specific moral and legal obligation to protect records and information from the state. Without a properly filed subpoena.

Not one piece of the information the board has

requested to is relevant to the current board allegations, but is clearly an attempt by the board to seek new civil or criminal penalties.

The Petitioner as well carries a civil liability from past associates to protect all information intrusted to him. The Petitioner has received no release of civil or criminal liability in order to comply with the boards request.

"At this time Lowry has not formally invoked the right against self-incrimination, let alone done it with generic particularity. His original assertions of privilege were generic objections." (to specific questions) - confidential and privileged." Department's Supplemental Opening Brief, Page 5, section B, line 1, 2, and 3.

The Petitioner finds it offensive that the board holds so little respect for hard working Americans in the Construction trade. That the Petitioner finds it to be his moral obligation to object to the dehumanization of said construction workers.

"Construction employees do not have a reasonable expectation of privacy in their job status, title, or the work they do. That information is freely distributed in the construction industry, and construction work is typically done in full view of the public." Department's Reply To Respondent's Response To Department's Motion to Compel, Page 11, line 5, 6, 7, & 8.

A lawyer's employment records are not public information

and I am sure the boards attorney would find issue if his/her record was released, with out his being notified."

Additionally, the nature of the employment and commercial information the department seeks is simply not sensitive." Department's Reply To Respondent's Response To Department's Motion To Compel, page 11, paragraph 3.

So simply because a construction worker works in public view. Said construction workers promotions, demotions, accolades, or write-ups According to the board are all public information. The Petitioner has told the board no electrical work was performed by his company. No further exploration of the subject is needed. That is the Petitioner's answer. What would customer contact information further, but to harass customers and further destroy the Petitioner's company. The ~~board~~ boards request is outside of the scope of the three allegations. Thus the requested information simply put is; exploration of new allegations, and therefore not only does the Petitioner have certain constitutional protections, but so do all of the Petitioner's employees, customers, and business associates.

"to refer such cases for criminal prosecution." Ex. "A", unlicensed Practice Section.

Furthermore, the Electrical Board does not carry via a discovery request the judicial authority to order out-of-state business associates, associates whom have never steped foot in Montana to surrender records. That have never been maintained in Montana.

In closing, the Petitioner again ask the Court to view ex "L". There are two people in said exhibit. One is the Petitioner is a party to these allegations. The other is an employee, who is not a party to these proceedings. Yet unknown to said employee. The state under order of the board, Has taken hundreds of photos of him. During his normal everyday activities.

This is clearly a violation of said employees constitutional rights. But as well, forcing the Petitioner to turn over said employees private records, With no notification to said employee. Would further violate said employees constitutional rights.

C.) Seventh \ Sixth Amendment Violations

i.) Seventh Amendment

The Petitioner now prays this Court to recognize the Petitioner's constitutional right to at a minimum a Seventh Amendment Constitutional right to a trial by a Jury of the Petitioner's piers. Held under a duly sworn Judge of the state of Montana. That at any time when a state seeks to impose a financial "punishment" on it's Citizens. Said Citizen's have a constitutional right to a trial by a jury.

"The 8th Circuit has acknowledged that at common law a sovereign likely has a right to a jury in a common action with a private party." Entergy Ark v. Neb., 353 F.3d 528, 643

This right is established in such basic government fines as a traffic ticket. Yet the state of Montana imposes extreme

hardships upon the Petitioner via a bias investigation. That clearly infringes the Petitioner's basic civil liberties. Clearly the board is not capable of fair and equal treatment (see ex. "L").

As well under the Seventh Amendment. The Petitioner argues that if this matter is civil in nature. The Petitioner still maintains a basic constitutional right to a speedy resolution to allegations that not only harm the Petitioner's name but as well as the Petitioner's business.

The board's investigation began in October of 2019, and a final report was released April 12, 2021 (see ex. "A"). The board decided to mail notification of these allegations to the Petitioner's "street" home address (see ex. "R"). The board and all it's staff were fully aware that the Petitioner was in jail (see ex. "e", and ex "A"). The act of mailing that notification to an address the Petitioner was not at. Was clearly a delay tactic. The board strategically decided with the county prosecutors office to not pursue the electrical violations unless the states case became weak.

The prosecutor's office needs the electrical investigation to bypass certain laws they must follow. As well as to support the claim that the Petitioner ran, and practiced "bad business practices."

When the road got bumpy for the prosecutors office. The Prosecutor's office asked Mr. Friede and his board friends to fish for new evidence via an electrical board hearing. The Petitioner believes this delay has caused great harm to the

Petitioner's chances of exoneration via a supply of fresh evidence. Evidence that could have possibly exonerated the Petitioner and allowed the Petitioner to protect, at a minimum the Petitioner's money, and in all likelyhood from being criminally charged with new allegations. Yet now all the evidence is either lost, or no longer available to the Petitioner.

After the adoption of the 7th amendment, federal courts followed this english common law in treating the civil penalty suit as a particular type of an action in debt requiring a jury trial." i.d. The supreme court thus found that "[a]ctions by the goverment to recover civil penalties under statutory provisions therefore historically have been used as one type of action in debt requiring a trial by jury." Id at 418-19, 107 S.Ct. 1831 "In assessing the second part of the full test, the court found that a "civil penalty" was a type of remedy at common law that could only be enforced in courts of law *(emphasis added). Remedies intended to punish culpable individuals as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." Id at 422, 107 S.Ct. 1831, " In this assessment, the court gave particular importance to the fact that the monies gave particular importance to the fact that the monies assessed against the defendant were intended not simply to disgorge profits but also to impose punishment." Id. at 423, 108 S.ch. 1831.

ii.) Sixth Amendment

"
In addition, all boards and programs have the authority to seek an injunctive or declaratory action in response to substantiated cases of unlicensed practice or to refer such cases for criminal prosecution ✱ (emphasis added) Ex. "A", Unlicensed Practice section.

Even though the Petitioner above argues that the board has violated the Petitioner's 7th Amendment right. The Petitioner believes this case to strange to fully decide which constitutional liberty the Petitioner should enjoy in the boards "administrative proceeding".

The Petitioner believes, as the ~~Petitioner~~ Petitioner believes this Court will believe. That the boards proceedings are not "administrative proceedings," but per the boards own documentation, criminal proceedings. Thus not only should the Petitioner enjoy a jury of the Petitioner's peers, but a speedy resolution to the board's allegations.

"
The 6th amendment provides in part that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherin the crime shall have been committed." Betterman v. Montana, 578 U.S.

And since these allegations have clearly violated even a loosly translated fast & speedy trial protection of the Petitioner's. That leaves only one possible outcome:
"
The sole remedy for a violation of the speedy trial right is dismissal of the charge." Betterman v. Montana, 528 U.S. 437, 444.

As well the Petitioner argues that since these allegations so clearly are criminal in nature, or pose a risk of new criminal allegations, or potential harm to current criminal allegations. The Petitioner should enjoy a court appointed attorney. Since clearly due to the Petitioner's incarceration. The Petitioner is unable to afford one himself.

## III  JURISDICTION\ROCKER-FELDMAN DOCTRINE

The Petitioner now wishes to address the Rocker-Feldman doctrine in this portion of this writ. The Petitioner argues that since the Petitioner has no access to the First Judicial District Court (see ex."M", ex."N", ex."Z" "P", ex."O", and ex."A4") That he has exhausted state remidies and the state has declined to except jurisdiction over the constitutional questions at issue's in this matter. Therefore Jurisdiction over these constitutional questions is properly brought in this Court.

In support of this argument the Petitioner ask the Court to look at ex. "M". ~~In ex. "M"~~ Ex. "M" is a copy of a lawsuit filed by the Petitioner against the First Judicial District Court. This lawsuit was an attempt to be allowed to file judicial items in the district court. Exhibit "A4" is a writ of supervisory control filed in the Montana Supreme court, in which the Petitioner asked the Supreme court to intervene and direct the First Judicial District Court to allow the Petitioner's filing's to procede to a district court Judge.

In this Writ the Montana Supreme Court informed the

Petitioner, that the Petitioner's divorce (one of the complaint's of court proceedings that was not being allowed to go before a judge) had been properly served and therefore the Petitioner needed only to file a "motion for summary Judgement. Since the Petitioner's ex had failed to respond. The First Judicial District Court Clerk excepted the motion for summary Judgement. Stamped it as filed, and then whited out the filed stamp, and returned the motion for summary ~~Judgeim~~ Judgement to the Petitioner. With no explanation (see ex. "o").

Ex. "p" is a letter from the First Judicial District Court Clerk. A letter in which the court clerk in an extremely cryptic way basicaly tells the Petitioner, there is nothing he can do.

Ex. "n" was the Petitioner's attempt to file a notice of appeal in Missoula County. In regards to this discussed Labor Industry dispute. This notice was only filed, after the Petitioner's four notice of appeals in the First Judicial District Court were ignored. The board promptly contacted the Missoula County Court Clerk and had said court clerk not except the Petitioner's notice of appeal. Even though a Judge should have made that decision. Not the court clerk.

The Petitioner eventually filed seven notice of appeals in the First Judicial District Court. The Petitioner heard nothing back from any of them. Eventually due to time limits the Petitioner filed a notice of appeal in the Montana Supreme Court under Cause No.: DA 23-0577 (see Ex. "2"). This appeal was excepted and then promptly dismissed with

prejudice. The dismissal stated that the Petitioner could not appeal an "administrative proceeding" to the Montana Supreme Court. Said order ~~direc~~ directed the Petitioner to refile the Petitioner's appeal in a district court. This is not an available option for the Petitioner. No matter what the Petitioner does. The district court simply ignores the Petitioner's filing.

Yet in the hope for justice, and resolution of this matter. The Petitioner attempted one more time to file a notice of appeal in the First Judicial District Court. Filing a notice of appeal with a out of time brief. Making a total of eight filed notice of appeals. The Petitioner once again heard nothing.

Therefore, the Petitioner argues that the state of Montana has declined jurisdiction and handed down a final judgement under Cause No.: DA 23-0577 (see ex. "2"). Leaving no other avenue of relief other then this Court available to the Petitioner.

"The District of Columbia Circuit affirmed the dismissal of Hickey's and Feldman's antitrust claims on the ground that they were insubstantial" Fieldman v. Gardner, 215 U.S. App. D.C. 119, 122, 661 F.2d 1295, 1298 (1981) "The court, however, concluded that the waiver proceedings in the district of Columbia court of appeals "were not judicial in the federal sense, and thus did not foreclose litigation of the constitutional contentions in the district court" (Ibid The court therefore reversed the dismissals of the

Constitutional claims and remainded them for consideration on the merits"

The Petitioner is not asking this Court to overturn any state court decision. Since no state court judgement on the constitutional questions was ruled on, but for this Court to provide a declaration of the Petitioners constitutional rights as they stand today.

Since the boards allegations carry at a minimum a financial "punishment", and a more probable criminal charge. The Petitioner has no fast remedy for relief other then this Court. Contradictory to the Supreme Court of Montana's stance. The Petitioner can not simply default and then move a district court and eventually appeal again to the Montana Supreme Court. Since the path to a district court is blocked by state agents.

"In addition all boards and programs have the authority to seek an injunctive or declaratory action in response to substantiated cases of unlicensed practice or to refer such cases for criminal prosecution." Ex. "a", Unlicensed Practice section.

These allegations carry huge implications in the Petitioner's current criminal charges, as well as possible new criminal charges

"The Ninth Circuit requirement in Marshall v. Sawyer, supra, is not that the defendant intended to deprive the Plaintiff of his constitutional rights, but that "the conduct complained of was engaged in under color of state law, and that such conduct subjected the Plaintiff to the deprivation of rights, privileges,

or immunities secured by the constitution of the United States." Marshall v. Sawyer, supra, 301 F.2d at 646

The state has declined to hand down a ruling. Leaving no avenue of relief available to the Petitioner. Furthermore, constitutional questions are properly brought to this Court.

"A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the constitution. When federal questions are raised and proper steps taken to that end in this Court." id, 567-569, 65 S.Ct. 1311-1312, D.C. Court of appeals v. Feldman, 460 U.S. 462 [03 S.ct. 1303, 75 L.Ed.2d 206

"In short he was seeking "a declaration on rights as they [stood] ... not on rights which [might] arise in the future ..." In re Summers, 325 U.S. at 567, 655

## III WRIT OF CERTIORARI IS PROPER

### A.) Excess of Jurisdiction

The Petioner argues that the state of Montana Electrical Board does not have the jurisdiction\training to decide questions about the Petitioner's constitutional rights. That the boards dismissal of such frivolous things such as warrants (see ex. "L") clearly shows that the board is not the proper goverment body to decide such matters as constitutional rights. The board is not the proper venue to decide whether

it's allegations are criminal in nature, or if said proceedings unconstitutionally infring onto the district court's jurisdiction that is over the Petitioners current criminal allegations. The board didn't even bother to contact said criminal court and ask. They simply claimed it was the Petitioner's job to ask the criminal court.

Basically, the state of Montana is gathering criminal evidence under the cloak of an "administrative proceeding". The board even goes as far as to in one breath inform the Petitioner "that the board will use everything he provides against him" while in the other breath claiming that "administrative proceedings are immune from constitutional liberties".

The board clearly forgets to truthfully inform the Petitioner that the board's "administrative proceedings will lead to criminal charges, and that collected evidence will be used to that end." Even though said evidence was collected under a loose civil interpretation of constitutional law. The board just simply forgets and then inforces the board standard that the Petitioner has no right to remain silent, even though the Petitioner has a clear right in remaining silent.

"In addition, all boards and programs have the authority to seek an injunctive or declaratory action in response to substantiated cases of unlicensed practice or to refer such cases for criminal prosecution." Ex "A", Unlicensed Practice Section

B.) Absence of Right to Appeal

The First Judicial District Court's actions of not allowing the Petitioner to file a Notice of Appeal. Has exhausted the Petitioner's right to appeal to a district court. As well the Montana Supreme Court has declined to except the Petitioner's appeal. Leaving no avenue of appeal available to the Petitioner.

The Petitioner can not answer the board's discovery questions without causing legal harm to himself, and the Petitioner can not allow the matter to default against him. Since that action would lead to new criminal charges.

The Supreme Court of Montana dismissed the Petitioner's appeal with prejudice (see ex. "Z"). Without ruling on the merits of the Petitioner's constitutional questions. Leaving only this Court as the Petitioner's avenue to protection of the Petitioner's constitutional rights.

C.) Lack of Plain, Speedy, and Adequate Remedy

The Petitioner has no further avenue of relief if this Court does not except this writ. Other then to simply discard his constitutional rights, and answer questions that will directly legally harm the Petitioner.

Simply put, the Petitioner can not simply plead guilty and simply pay a fine. Since per board policy. Doing such a thing would make it impossible for the Petitioner to defend

against the resulting new criminal charge. As well as greatly harm the Petitioner's current criminal allegations

Thus everything the Petitioner says or does can be and will be per the boards notification, used against the Petitioner. Leaving no possible way of over coming a guilty verdict on any new civil or criminal allegations brought as a result of the boards "administrative proceedings"

As well, if this Court does not step in and answer the Constitutional questions at hand. The extra time it will take for the Petitioner to receive an answer from some other avenue. Would further ~~deteriate~~ destroy any possible evidence the Petitioner needs to win a criminal trial. When the board files these allegations.

## CLOSING

In closing, the Petitioner prays this Court will grant relief in this matter. The Scales of Justice are most definately not tiped in the criminal defendant's favor The State exercises so much power. It simply becomes a constant beating until a criminal defendant simply submits, and excepts the guilt for a crime said defendant did not committ. I need help. I can no longer stands the winds I face, alone, and I PRAY this Court's help.

## RELIEF SOUGHT

1.) This Court properly exercise jurisdiction over this matter.

2.) This Court assign the Petitioner an attorney for these proceedings.

3.) This Court rule on how the Constitutional rights of the Petitioner stand.

4.) Whatever relief this Court sees fit

Respectfully signed this 24th day of November, 2023

By 3————— ✓
Bobby G. Lowry V

CERTIFICATE OF SERVICE

I, Bobby Lowry, placed a true and accurate copy of this writ, in the inmate mailing system, on the below date, and addressed to the Montana Labor & Industry attorney of record.

Signed this 24th day of November, 2023

By: 3————— ✓
Bobby G. Lowry V